**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

SARA C. JAMES,

    Plaintiff,

v.                                                                             Case No. 3:18-cv-628-J-34JRK

WASHINGTON NATIONAL INSURANCE
COMPANY,

    Defendant.

## **ORDER**

**THIS CAUSE** is before the Court on Plaintiff's Motion to Remand (Doc. 10; Motion), filed on June 8, 2018. Defendant filed a response on June 22, 2018. See Defendant, Washington National Insurance Company's Response Memorandum of Law in Opposition to Plaintiff's Motion to Remand (Doc. 11; Response). Accordingly, this matter is ripe for review.

**I.    Background**

Plaintiff Sara C. James purchased a home health care policy, PL1147001A (Doc. 2-1; Policy), effective August 2, 1995, from Pioneer Life Insurance Company, acquired by Defendant Washington National Insurance Company. See Complaint for Declaratory Judgment, and for Breach of Contract (Doc. 2; Complaint) ¶5. Pursuant to the Policy, Plaintiff is eligible for a home health care daily benefit of $180.00 per day if preauthorized, and $135.00 per day if not preauthorized. See Policy at 5.[1] Plaintiff is eligible for a

---
[1]    Page numbers reflect the pagination assigned by the Court's CM/ECF docketing system, which are found at the top of each page.

lifetime maximum benefit of $250,000.00, and a per occurrence maximum benefit of $150,000.00 per illness. Id. The Policy provides that "[s]uccessive confinement due to the same or related cause not separated by at least 6 months of normal daily living will be considered as the same occurrence." Id. at 8.

Plaintiff asserts that Defendant has paid home care health benefits for Plaintiff since April 1, 2010. See Complaint ¶8. The benefits were intended to enable Plaintiff to obtain assistance bathing and dressing as a result of her herniated lumbar disc and spinal stenosis. Id. ¶9.

On July 4, 2017, Plaintiff fell and fractured her hip, which required her to undergo surgery and to be admitted to an inpatient rehabilitation facility on a temporary basis. Id. ¶11. As a result of her fall, Plaintiff "continues to experience limitations to mobility, activity, pain and the ability to perform activities of daily living on a constant basis including but not limited to transferring, toileting, walking, mobility, and ambulating." Id. ¶12. These injuries and limitations are permanent. Id.

Plaintiff requested acknowledgment from Defendant that her fractured hip is a new occurrence for which she is eligible for an additional $150,000.00 of benefits, subject to the $250,000.00 lifetime maximum benefit. See Affidavit of Kimberly Martin (Doc. 11-1; Martin Aff.), Ex. A: August 8, 2017, Letter, Ex B: August 28, 2017, Letter, Ex. C: August 29, 2017 Letter. Defendant denied Plaintiff's request because it determined that her hip fracture was "related to her original diagnoses of spinal stenosis and osteoporosis," and "there is no objective evidence of a return to normal daily living for at least six months." See Martin Aff., Ex. D: November 8, 2017 Letter at 2. Plaintiff requested that Defendant reconsider its decision based on her belief that her fractured hip was not "the same" or

"related to" her herniated lumbar disc or spinal stenosis. See Complaint ¶¶17-18. Defendant denied Plaintiff's request. Id. ¶18.

According to Plaintiff, because Defendant did not regard Plaintiff's fractured hip as a new injury, she "has underutilized her $150,000.00 initial benefit in order to 'save' benefits and prolong her coverage as long as she can into the future." Id. ¶19. Additionally, she "has foregone hours of needed and beneficial home health care," and paid out of pocket for care which should have been covered, in order to "stretch" her initial benefits "as much as possible." Id.

On April 5, 2018, Plaintiff filed the two-count Complaint in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida. See Complaint at 1. In Count I, Plaintiff seeks a declaration that she "is immediately entitled to home health care benefits in an amount up to the $250,000.00 Lifetime Limit due to injuries and limitations resulting from her fractured hip," and that Defendant "is immediately obligated to cover Plaintiff Sarah James for home health care under the Policy in an amount up to the $250,000.00 Lifetime Limit due to injuries and limitations resulting from her fractured hip." Id. at 5 (Wherefore Clause). Additionally, Plaintiff seeks a "Judgment declaring that . . . Plaintiff be awarded her costs and attorneys' fees incurred herein," as well as "such other relief as the Court deems just and proper." Id. In Count II, Plaintiff asserts a breach of contract claim against Defendant based on Defendant's denial of "Plaintiff's eligibility for additional home health care benefits under the Policy in an amount up the Lifetime Limit of $250,000[.00] on account of her hip fracture injury in July of 2017." Id. ¶28. Plaintiff alleges that Defendant breached the Policy "both anticipatorily and in fact." Id. As a result, Plaintiff seeks damages, as well as interest, costs and attorney's fees. Id.

Plaintiff served Defendant with a copy of the Complaint and summons on April 18, 2018. See Defendant, Washington National Insurance Company's Notice of Removal (Doc. 1; Notice) ¶1. Defendant filed its answer on May 9, 2018, see Defendant, Washington National Insurance Company's Answer and Affirmative Defenses to Plaintiff's Complaint (Doc. 3; Answer), and removed the action to this Court and invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332 on May 11, 2018, see Notice ¶¶6-11. In the Notice, Defendant contends that the parties are diverse because Plaintiff is a citizen of Florida and Defendant is a citizen of Indiana, and that the amount in controversy is satisfied because "[i]n her Complaint, Plaintiff seeks an additional $100,000.00 benefit under the Lifetime Limit of her Ho[m]e Health Care insurance policy." Id. ¶¶7-8, 10 (citing Complaint ¶19). In the Motion, Plaintiff requests that the Court remand this matter back to the state court because Defendant has failed to establish that the amount in controversy satisfies the $75,000.00 jurisdictional threshold required under 28 U.S.C. § 1332. See generally Motion. Defendant opposes the requested relief. See generally Response.

**II.   Applicable Law**

"If a state-court complaint states a case that satisfies federal jurisdictional requirements, a defendant may remove the action to federal court pursuant to 28 U.S.C. § 1446(b)." See Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1060 (11th Cir. 2010). The removing party bears the burden of demonstrating that federal jurisdiction exists. Kirkland v. Midland Mtg. Co., 243 F.3d 1277, 1281 n.5 (11th Cir. 2001); see also Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010).[2] Here, where Defendant relies on

---

[2]   Although Pretka involved removal under the Class Action Fairness Act of 2005 (CAFA), it interpreted and applied the general removal procedures; indeed, with limited exception, "CAFA's removal provision expressly adopts the procedures of the general removal statute, 28 U.S.C. § 1446." Pretka, 608 F.3d at 756-57 & n.11 (citations omitted). Thus, the Court finds Pretka's analysis applicable to the case at bar.

diversity jurisdiction under § 1332(a) as the basis for removal, this burden requires Defendant to show both that the parties to the action are of diverse citizenship and that the amount in controversy exceeds $75,000. See Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001). In this case, Plaintiff does not dispute that the parties are of diverse citizenship. See Motion at 3. Therefore, the only jurisdictional question before the Court concerns whether the amount in controversy requirement has been satisfied. Williams, 269 F.3d at 1319.

Where, as here, "the plaintiff has not plead[ed] a specific amount of damages . . . the defendant is required to show . . . by a preponderance of the evidence that the amount in controversy can more likely than not be satisfied." Kirkland, 243 F.3d at 1281 n.5; see also Pretka, 608 F.3d at 752 (quoting Williams, 269 F.3d at 1319); Roe, 613 F.3d at 1061.[3] "In some cases, this burden requires the removing defendant to provide additional evidence demonstrating that removal is proper." Roe, 613 F.3d at 1061. However, in other cases, "it may be 'facially apparent' from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, even when 'the complaint does not claim a specific amount of damages.'" Id. (quoting Pretka, 608 F.3d at 754). In determining whether the amount in controversy requirement is met, the Court "focuses on how much is in controversy at the time of removal, not later." Pretka, 608 F.3d at 751 (citations omitted); see also Poore v. Am.-Amicable Life Ins. Co., 218 F.3d 1287, 1290-91 (11th Cir.

---

See Bender v. Mazda Motor Corp., 657 F.3d 1200, 1204 n.2 (11th Cir. 2011); Roe, 613 F.3d at 1061-62.

[3] By contrast, if the plaintiff asserts in his or her ad damnum clause a specific claim for less than the jurisdictional amount, the removing defendant must prove "to a legal certainty" that the plaintiff, if he or she prevailed, would not recover below the jurisdictional amount of $75,000. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1097 (11th Cir. 1994). Inasmuch as Plaintiff has not pleaded a specific amount of controversy in her Complaint, Defendant must establish the amount in controversy by the preponderance of the evidence.

- 5 -

2000) (holding that "the district court must determine whether it had subject matter jurisdiction at the time of removal"), overruled on other grounds, Alvarez v. Uniroyal Tire Co., 508 F.3d 639, 640-41 (11th Cir. 2007); Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 946 (11th Cir. 2000).

A court may not speculate or guess as to the amount in controversy. See Pretka, 608 F.3d at 752. However, "Eleventh Circuit precedent permits district courts to make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable." Roe, 613 F.3d at 1061-62 (quoting Pretka, 608 F.3d at 754). Indeed, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." Id. at 1062. Moreover, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." Pretka, 608 F.3d at 754. All that is required is that a removing defendant show, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional requirement. See id. at 752. However, in considering the propriety of a removal, federal courts consistently caution that removal statutes must be strictly construed, and all doubts resolved in favor of remand. See Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994); see also Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.") (internal citations omitted). Nonetheless, when it is clear that the jurisdictional minimum is likely met, a district court should acknowledge the value of the claim, even if it is unspecified by the plaintiff.

See Roe, 613 F.3d at 1064. To do otherwise would abdicate the court's statutory right to hear the case, and reward a plaintiff for "employing the kinds of manipulative devices against which the Supreme Court has admonished us to be vigilant." See id.

### III. Analysis[4]

In the Motion, Plaintiff requests that the Court remand this case because Defendant has failed to establish that the amount in controversy exceeds $75,000.00 by a preponderance of the evidence. See generally Motion. Specifically, Plaintiff contends that the amount in controversy is determined by the value of benefits accrued, and not the face value of the Policy. Id. at 5, 7-10. In the Response, Defendant contends that "Plaintiff's express allegations in the Complaint," as well as the evidence submitted by Defendant, support that this matter, at least with respect to Plaintiff's declaratory relief count, exceeds the $75,000.00 diversity jurisdiction amount in controversy requirement of 28 U.S.C. § 1332(a)." See Response at 8.

Preliminary, the Court will address Defendant's contention that "this Court accepted jurisdiction." See Response at 1, 4. On May 14, 2018, the Court entered a notice stating that "[b]ased on the parties' filings, the Court is satisfied of the existence of subject matter jurisdiction over this action." See Notice (Doc. 6). However, this initial finding based on

---

[4] The Court notes that "because [Defendant] filed its notice of removal within thirty days of being served with the summons and initial complaint," the removal is governed by what was formerly referred to as the first paragraph of § 1446(b). See Pretka, 608 F.3d at 757; Roe, 613 F.3d at 1060 n.2. Section 1446 was reorganized by Congress in 2011. Until that reorganization, § 1446(b)(1) was known as the "first paragraph," and § 1446(b)(3) was referred to as the "second paragraph." See Albritton v. Geovera Specialty Servs., Inc., 961 F. Supp. 2d 1220, 1222 (M.D. Fla. 2013); Davis v. Country Cas. Ins. Co., No. 6:13-cv-513-SLB, 2013 WL 3874709, at *2 n.5 (N.D. Ala. July 25, 2013); Musgrove v. Kellogg Brown & Root, LLC, No. 13-0104-WS-C, 2013 WL 1827583, at *2 (S.D. Ala. Apr. 29, 2013) (citing Pretka, 608 F.3d at 757). This distinction is significant because, as a first paragraph removal, "defendant may present additional evidence–business records and affidavits, for instance–to satisfy its jurisdictional burden." Roe, 613 F.3d at 1061 n.4; see also Pretka, 608 F.3d at 761-62, 770-71 ("[The f]irst paragraph does not restrict the type of evidence that a defendant may use to satisfy the jurisdictional requirements for removal.").

the face of the initial pleading invoking the Court's jurisdiction is not dispositive. Federal courts are courts of limited jurisdiction and therefore have an obligation to inquire into their subject matter jurisdiction. See Kirkland, 243 F.3d at 1279-80. This obligation exists regardless of whether the parties have challenged the existence of subject matter jurisdiction. See Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999) ("[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking"). Indeed, with respect to removed cases, "'[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded' to the state court from whence it came." Univ. of S. Ala., 168 F.3d at 410 (quoting 28 U.S.C. § 1447(c)). Thus, the Court's preliminary determination that it had subject matter jurisdiction over this action does not preclude the Court from continuing to question its authority to adjudicate the case. As such, the Court will address the merits of the Motion.

Generally, for purposes of determining the amount in controversy, if the validity of an insurance policy is in dispute, then courts are to consider the face value of the policy. See Hawkins v. Aid Ass'n for Lutherans, 338 F.3d 801, 805 (7th Cir. 2003) ("[W]hen the validity of a policy (as opposed to the insurer's obligation to pay) is in dispute, the face value of that policy is a proper measure of the amount-in-controversy."); Hartford Ins. Grp. v. Lou-Con Inc., 293 F.3d 908, 910 (5th Cir. 2002) ("We recognize that under certain circumstances the policy limits will establish the amount in controversy. Specifically, the policy limits are controlling 'in a declaratory action . . . as to the validity of the entire contract between the parties."). However, "in declaratory judgment cases that involve the applicability of an insurance policy to a particular occurrence, 'the jurisdictional amount in

controversy is measured by the value of the underlying claim—not the face amount of the policy.'" Lou-Con Inc., 293 F.3d at 910 (citation omitted).

The Eleventh Circuit appears to follow this rule. In Guardian Life Ins. Co. of Am. v. Muniz, 101 F.3d 93 (11th Cir. 1996), the court held that the district court erred in failing to consider the face value of the policy where an insurance company sought cancellation of a life insurance policy based on an alleged misrepresentation in the application. Id. at 94. The court relied on New York Life Ins. Co. v. Swift, 38 F.2d 175 (5th Cir. 1930),[5] in which the Fifth Circuit held that the face value of a life insurance policy determined the amount in controversy in an action brought in order to cancel the policy. See Muniz, 101 F.3d at 94 (citing Swift, 38 F.2d at 176). Further, district courts throughout the circuit have held that where the insured's right to coverage for a particular occurrence, and not the validity of the policy, is at issue, the value of the claim rather than the face value of the policy determines the amount in controversy. See Wolk v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, No. 6:12-cv-960-Orl-19KRS, 2012 WL 12952758, at *4 (M.D. Fla. Sept. 7, 2012); Martins v. Empire Indem. Ins. Co., No. 08-60004-CIV, 2008 WL 783762, at *21 (S.D. Fla. Mar. 21, 2008); Employers Mut. Cas. Co. v. Parker Towing Co., No. 07-0684-WS-B, 2007 WL 4577705, at *2 (S.D. Ala. Dec. 27, 2007); Kelly v. Gen. Star Nat'l Indem. Co., No. 8:07-CV-1143-JDW-TGW, 2007 WL 3034654, at *2 (M.D. Fla. Oct. 16, 2007); Lutz v. Protective Life Ins. Co., 328 F. Supp. 2d 1350, 1355 (S.D. Fla. 2004).

In this action, Plaintiff does not question the validity of the Policy, but instead seeks a declaration regarding whether her fractured hip constitutes a new injury and entitles her

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

to additional benefits. The foregoing authority counsels that the value of Plaintiff's claim, and not the face value of the Policy, determines the amount in controversy. In order to ascertain this figure, the Court must identify "the monetary value of the object of the litigation from the plaintiff's perspective." Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003). Here, Defendants have failed to introduce any evidence to suggest that the monetary value of Plaintiff's claim exceeds $75,000.00. In the August 29, 2017 Letter, Plaintiff requested that Defendant recognize her hip fracture as a new injury which would render her eligible to recover up to $100,000.00 in additional benefits, and authorize home health care for eight hours a day, seven days a week. See August 29, 2017 Letter at 2. However, Defendants fail to introduce any evidence indicating the value of such services, and therefore, this sum is too speculative to satisfy the amount in controversy. See Cohen v. Office Depot, Inc., 204 F.3d 1069, 1079 (11th Cir. 2000) (finding that a speculative value cannot be used to satisfy a jurisdictional inquiry).

Further, to the extent Plaintiff seeks a declaration with respect to her future right to benefits under the policy, "the measure of recovery and, hence, the amount in controversy, is only the aggregate value of past benefits allegedly wrongly withheld." Beaman v. Pac. Mut. Life Ins. Co., 369 F.2d 653, 655 (4th Cir. 1966). There is no actual controversy with respect to the value of future potential benefits. See Mass. Cas. Ins. Co. v. Harmon, 88 F.3d 415, 416-17 (6th Cir. 1996); Beaman, 369 F.2d at 655-56; Keck v. Fid. & Cas. Co. of N.Y., 359 F.2d 840, 841 (7th Cir. 1966); White v. N. Am. Accident Ins. Co., 316 F.2d 5, 6 (10th Cir. 1963); Travelers Ins. Co. v. Greenfield, 154 F.2d 950, 952 (5th Cir. 1946).

Notably, the parties do not appear to dispute that Plaintiff seeks to recover less than

$75,000.00 in Count II of the Complaint for breach of contract. Indeed, Defendant addresses only the claim for declaratory judgment in Count I in arguing that the amount in controversy exceeds $75,000. See generally Motion; Response at 8 ("Plaintiff's express allegations contained in the Complaint, . . . support that this matter, at least with respect to plaintiff's declaratory relief count, exceeds the $75,000.00 diversity jurisdiction amount in controversy requirement of 28 U.S.C. §1332(a)."). Nevertheless, the Court will analyze the value of the breach of contract claim. In Count II, Plaintiff alleges that Defendant breached the Policy, "both anticipatorily and in fact," by denying Plaintiff additional benefits for a new occurrence, which "forced" her to "underutilize her benefits under the Policy in an effort to 'conserve' them, and pa[y] for home health care out of her own pocket which should have been covered under the Policy." See Complaint ¶¶28-29. The Court finds that the amount in dispute in Count II does not satisfy the jurisdictional threshold. As discussed, Defendant failed to introduce any evidence that Plaintiff's future benefits exceed $75,000.00. See infra at 9-10.

Further, even if Plaintiff's future benefits did exceed $75,000.00, the weight of authority suggests that the Court would not be permitted to consider those sums in determining the amount in controversy in Count II. "For breach short of repudiation or an intentional abandonment equivalent thereto, the damages under such a policy as this do not exceed the benefits in default at the commencement of the suit." N.Y. Life Ins. Co. v. Viglas, 297 U.S. 672, 678 (1936); see also Mobley v. N.Y. Life Ins. Co., 295 U.S. 632, 638 (1935); Merrick v. Allstate Ins. Co., 349 F.2d 279, 282 (8th Cir. 1965); Henderson v. Nat'l Fid. Life Ins. Co., 257 F.2d 917, 918 (10th Cir. 1958). That is, where, as here, "the claimed breach falls short of repudiation or intentional abandonment, recovery cannot

exceed the accrued benefits under the policy." Henderson, 257 F.2d at 918. With respect to the amounts accrued, Plaintiff has submitted an affidavit testifying that she "paid between $11,000.00 and $12,000.00 for home healthcare services apart from services paid by" Defendant . . . in order to conserve [her] benefits under the" Policy. See Affidavit (Doc. 10-1; James Aff.) ¶¶4-5. Plaintiff also submitted the affidavit of Daniel Felton, who helped Plaintiff write checks, and testified that between January 4, 2016, and June 8, 2018, Plaintiff signed $5,750.72 in checks to Kathy Ward for home healthcare services, and "a similar amount" to another individual for such services. See Affidavit (Doc. 10-2; Felton Aff.) ¶¶2-4. Although the exact amount of unpaid accrued benefits is uncertain, it clearly falls well short of the $75,000.00 statutory minimum to satisfy diversity jurisdiction.[6]

Defendant contends that if the amount in controversy is between $11,000 and $12,000, then Plaintiff cannot satisfy the $15,000.00 jurisdictional minimum for the state circuit court. See Response at 5. Florida circuit courts have original jurisdiction over all actions at law and in equity that exceed $15,000. See Fla. Stat. §§26.012(2)(a), (c); Fla. Stat. §§3401(1)(c), (4). Although it is unclear whether Plaintiff satisfies this threshold, the Court's obligation to remand a case back to the state court "is mandatory and may not be disregarded based on speculation about the proceeding's futility in state court." Univ. of S. Ala., 168 F.3d at 410 (citing Int'l Primate Protection League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 87-89 (1991)). To do otherwise would "unconstitutionally invade the powers reserved to the states to determine controversies in their own courts," as well as

---

[6] Defendant's contention that there is no actual dispute as to these sums because Plaintiff has failed to introduce evidence that she submitted her expenses for processing is premature and goes to the merits of the dispute. See Response at 5-6; Martin Aff. ¶¶6-8, 13. Whether or not Plaintiff has a right to receive the $250,000.00 lifetime maximum is not in controversy "because this 'right' may never come into existence." Keck, 359 F. 2d at 842.

"offend[ ] fundamental principles of separation of powers." Univ. of S. Ala., 168 F.3d at 410 (citations omitted). Indeed, because the Court lacks subject matter jurisdiction, any ruling in regard to the state court's authority to adjudicate the matter would be a non-binding advisory opinion. See id. at 411. Defendants have failed to cite "authority that would permit this Court to ignore the plain and clear language of" § 1447. Law Offices LA Ley Con John H. Ruiz, PA v. Borrowers, No. 13-22783-CIV, 2014 WL 30022, at *1 (S.D. Fla. Jan. 3, 2014).

Notably, Plaintiff seeks to recover her costs and attorney's fees incurred in this action. See Complaint at 5-6 (Wherefore Clauses). "When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy." Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1265 (11th Cir. 2000). In the Complaint, Plaintiff does not identify a statute that authorizes the recovery of her attorney's fees. See generally Complaint. However, even if Plaintiff were authorized by statute to recover such fees, the amount in controversy would still not be satisfied because the record is devoid of any evidence indicating the amount of those fees. As such, the Motion is due to be granted.

### IV. Conclusion

The Court finds that Defendant has failed to show "by a preponderance of the evidence that the amount in controversy can more likely than not be satisfied." Kirkland, 243 F.3d at 1281 n.5. Accordingly, remand is warranted. See id.

In light of the foregoing, it is hereby **ORDERED**:

1. Plaintiff's Motion to Remand (Doc. 10) is **GRANTED**.

2. The Clerk of the Court is **DIRECTED** to remand this case to the Circuit Court,

Fourth Judicial Circuit, in and for Duval County, Florida, and to transmit a certified copy of this Order to the clerk of that court.

3. The Clerk is further **DIRECTED** to terminate all pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of August, 2018.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

LC 25

Copies to:

Counsel of Record

Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida